IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-03088-PAB

LILA ANNE JIMENEZ,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

**ORDER**

---

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Lila Anne Jimenez on November 5, 2024. Plaintiff seeks review of the final decision of defendant (the "Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-3. Docket No. 1 at 1-5. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.    BACKGROUND

On May 12, 2021, plaintiff applied for disability insurance benefits under Title II of the Act. R. at 17.[1] Plaintiff's application was initially denied on October 18, 2021 and denied on reconsideration on July 7, 2023. *Id.* Plaintiff requested a hearing before an

---

[1] The record has been submitted across eight documents on the docket: Docket Nos. 8-1 to 8-8. The page numbers, found in the bottom, right-hand corner of each page following the index, *see, e.g.*, Docket No. 8-2 at 2, run consecutively across all eight documents. The Court will cite this page number when referring to the record.

Administrative Law Judge ("ALJ") and the hearing was held on February 6, 2024. *Id.* On March 4, 2024, the ALJ issued a decision denying plaintiff's application. *Id.* at 17-34.

To qualify for disability benefits, a claimant must have "disability insured status." 20 C.F.R. § 404.130(a). To achieve this status, a claimant must be both fully insured and insured for disability. *See* 42 U.S.C. §§ 414(a), 423(c)(1). The ALJ found that plaintiff's alleged onset date for her disability was June 26, 2020 and that plaintiff meets the insured status requirements of the Act through June 30, 2026. R. at 19. The ALJ determined that plaintiff had the following severe impairments: Mal de Debarquement syndrome; migraine headaches; left lateral and medial epicondylitis; obesity; and adjustment disorder with mixed anxiety and depressed mood. *Id.* The ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 20; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. After a review of the record, the ALJ found that plaintiff had a residual functional capacity ("RFC") to perform light work. R. at 22. Specifically, the ALJ found the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can frequently climb stairs and ramps; she can occasionally climb ladders, ropes, and scaffolds and balance; she can frequently stoop, kneel, crouch, and crawl; she is limited to noise levels at the "moderate" or quieter levels as defined in the Dictionary of Occupational Titles (DOT); she must avoid all exposure to hazards; she is limited to understanding, remembering, and concentrating to carry out simple, routine tasks; and she can have work interactions occasionally with the public.

*Id.* Based on this RFC, the ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform. *Id.* at 29-30.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on September 24, 2024. *Id.* at 1-4. Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.     STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 97 (citation and quotation omitted). "The threshold for such evidentiary sufficiency is not high." *Id.* at 103. However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)).

3

Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.    THE FIVE STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §§ 404.1520(b)–(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.    DISCUSSION

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because she failed to properly evaluate the medical opinion of Chelsea Van Zytveld, DPT.[2]  Docket No. 9 at 7.  Plaintiff contends that, in PT Van Zytveld's opinion, "Plaintiff's Mal de débarquement syndrome and accompanying headaches and dizziness would, *inter alia*, limit Plaintiff from jobs requiring close vision and that she could work a maximum of 2 hours per day."  *Id.* at 6 (citing R. at 1074).  Plaintiff takes issue with the ALJ's evaluation of Dr. Van Zytreld's opinion, which states as follows:

> The undersigned finds unpersuasive the April 2022 opinion of a treating physical therapist, Chelsea Van Zytreld, PT, DPT, stating that the claimant can work only two hours per day, stand for two hours at a time and total in a workday, sit for four hours at a time, but for only two hours total in a workday, occasionally balance, and tolerate noise exposure occasionally and her close vision is limited (See ex. 10F/3). This opinion is unpersuasive because its rather extreme

---

[2] "DPT" refers to a "doctor of physical therapy."  *See* Cleveland Clinic, Physical Therapist (Physiotherapist), https://my.clevelandclinic.org/ health/articles/ 24625-physical-therapist (last visited March 28, 2026).

> limitations are not consistent with the medical evidence documenting the claimant's good response to treatment, largely normal neurological exams, and reports of engaging in significant daily and physical activities.

R. at 27-28.  First, plaintiff argues that the ALJ performed a flawed analysis when she evaluated the persuasiveness of PT Van Zytreld's opinion.  Docket No. 9 at 8.   The most important factors that the ALJ uses to evaluate the persuasiveness of a medical source's opinion are supportability and consistency.  *See J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *4 (D. Colo. Aug. 7, 2023).  Thus, the ALJ is required to explain how she considered the supportability and consistency of a medical source's opinion.  *Id.*  "The supportability factor considers whether the medical source's opinions are supported by 'objective medical evidence' and 'supporting explanations.'"  *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).  "The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations."  *Id.*  The "consistency factor requires a comparison between the medical source opinion and 'the evidence from other medical sources and nonmedical sources' in the record."  *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). Plaintiff contends that the ALJ's "failure to discuss whether a source's own notes, diagnoses, and explanations support his or her opinion is reversible error."  Docket No. 9 at 9.  Plaintiff argues that the ALJ only considered the consistency factor of PT Van Zytveld's opinion.  Specifically, plaintiff contends that the ALJ's three reasons for finding PT Van Zytveld's opinion unpersuasive go towards the consistency and not the supportability factor: "(1) medical evidence documenting good response to treatment; (2) largely normal neurological exams; and (3) reports of engaging in significant daily and physical activities."  *Id.* (citing R. at 27-28).

The Court finds that the ALJ properly considered the supportability of PT Van Zytveld's opinion.  "While we may not supply a reasoned basis for the agency's action that the agency itself has not given" the court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Davis v. Erdmann*, 607 F.2d 917, 918 n.1 (10th Cir. 1979).  Although the ALJ did not "expressly state" that she was conducting a supportability analysis, the ALJ properly considered the lack of support for PT Van Zytveld's opinion based on PT Van Zytveld's own notes and findings.  *See T.D.F. v. Kijakazi*, No. 22-cv-02145-MDB, 2023 WL 6249035, at *7 (D. Colo. Sept. 25, 2023) (while "the ALJ did not expressly state he was conducting a consistency or supportability analysis in accordance with the controlling regulations," the court was nonetheless able to "review the analysis, follow the ALJ's reasoning, and determine whether or not the correct legal standards were applied").  The ALJ stated that PT Van Zytveld's opinion was not consistent with medical evidence that documented good response to treatment.  R. at 27-28.  The medical evidence cited by the ALJ, demonstrating plaintiff's good response to treatment, includes PT Van Zytveld's own records.  Specifically, the ALJ found that plaintiff's "visual convergence was improved by June 2021, when her uncorrected distance visual acuity was near-normal with full visual fields, full eye motility with no limitation of gaze, intact fixation without nystagmus, end-gaze nystagmus in the right and left gaze, overall normal smooth pursuits, accurate saccades, intact horizontal and vertical vestibular-ocular reflex, 'moderate' exophoria at distance and near without strabismus, and normal binocular testing" and that plaintiff "has benefitted from use of near prismatic corrective lenses since July 2021 and from intermediate/distance prism corrective lenses since October 2021," citing PT

7

Van Zytveld's records in support.  R. at 24 (citing R. at 726).  The ALJ found that PT Van Zytveld's physical therapy notes state that plaintiff "had good vestibular responses when visual and somatosensory input was reduced."  R. at 25 (citing R. at 727).  The ALJ noted that plaintiff reported going to San Francisco in July 2021 and "feeling okay walking and looking around," reported walking every day in August 2021, and, in September 2021, plaintiff went to two concerts, as recorded by PT Van Zytveld.  *Id.* (citing R. at 722, 724, 726).  Citing PT Van Zytveld's notes, the ALJ states that "the treatment records since the spring of 2021 document no indications of the need for regular room lights to be turned off.  Throughout the period since the spring of 2021, reports and observations indicate that her symptoms are worse in complex settings or chaotic environments."  *Id.* at 26 (citing R. at 722).  Summarizing plaintiff's medical record, which was based on PT Zytveld's records, the ALJ found as follows:

> The medical evidence discussed above documents generally good control of the claimant's psychological symptoms as well as substantial improvement of her Mal de Debarquement signs and symptoms by the spring of 2021, within 12 months of the alleged onset of disability, though she has continued with variable complaints of fluctuating neurological and cognitive symptoms along with variable findings of some residual vestibular insufficiency thereafter as well as indications that her symptoms are worse in complex settings or chaotic environments.

*Id.* at 26.  Thus, the Court can reasonably discern the basis for the ALJ's supportability analysis regarding PT Zytveld's opinion.  *See Davis*, 607 F.2d at 918 n.1.

Second, plaintiff challenges the ALJ's findings regarding the consistency of PT Van Zytveld's opinion.  Docket No. 9 at 10-12.  Plaintiff argues that the ALJ's finding that plaintiff engaged in "significant daily and physical activities" fails to "explain how these unidentified daily and physical activities undercut PT Van Zytveld's opinion about Plaintiff's work-related functional limitations."  *Id* at 10-11.  Specifically, plaintiff contends

that the ALJ's finding that plaintiff's activities are inconsistent with PT Van Zytveld's opinion "does not explain how these unspecified activities are inconsistent with Plaintiff's limited close vision." *Id.* at 11. The ALJ does specify the activities at issue, which include playing games on plaintiff's phone, doing puzzles, light cleaning, shopping, and driving. R. at 25. While some of these activities do not necessarily undermine PT Van Zytveld's opinion that plaintiff's close vision is limited, other activities, such as playing games on her phone, doing puzzles, and driving, do undermine such a finding. Moreover, plaintiff's record of daily activities was not the only evidence that the ALJ found to be inconsistent with PT Van Zytveld's opinion. The ALJ also found that plaintiff's medical records that document a good response to treatment and neurological exams undermined PT Van Zytveld's opinion. *See* R. at 27-28. The Court disagrees with plaintiff that the ALJ's finding that plaintiff's record demonstrates a "good response to treatment" constitutes a "conclusory analysis." *See* Docket No. 9 at 11-12. Plaintiff contends that there is "no explanation as to what the 'good response' was that undercuts PT Van Zytveld's limitations." *Id.* As discussed above, however, the Court finds that the ALJ properly explained the plaintiff's positive response to treatment, citing, not only PT Van Zytveld's own records, but also those of other medical providers. *See* R. at 24-27. Plaintiff does not challenge the ALJ's finding that PT Zytveld's opinion is inconsistent with plaintiff's neurological exam results . *See generally* Docket No. 9.

Thus, plaintiff's reliance on *J.T.L.*, 2023 WL 5017241, at *8, is misplaced. *See id.* at 10-11. In *J.T.L.*, the court found that "[s]imply identifying a purported inconsistency, without explaining *why* it is an inconsistency, is insufficient to meet the Regulations'

articulation requirements." *J.T.L.*, 2023 WL 5017241, at *8. *J.T.L.* found that "it was all the more important for the ALJ to explain why Plaintiff's ability to drive himself to a therapy appointment or drive himself to Denver on an unknown number of occasions is inconsistent with [the medical provider's] opinions about Plaintiff's *work-related* functional limitations – particularly, limitations 'in attendance and punctuality,' the two limitations specifically underscored by the ALJ as being inconsistent with Plaintiff's activities." *Id.* By contrast, here, there is a more "obvious connection" between plaintiff's ability to perform tasks such as playing games on her phone, doing puzzles, and driving and the ALJ's finding that PT Van Zytveld's opinion on plaintiff's limited close vision was unpersuasive. *See id.* Moreover, unlike in *J.T.L.*, PT Van Zytveld's opinion is not only inconsistent with plaintiff's report of daily activities, but is also inconsistent with the results of plaintiff's neurological testing and positive response to treatment. R. at 27-28. In other words, even if the ALJ erred in finding that plaintiff's report of daily activities was inconsistent with PT Van Zytveld's opinion, such error is harmless where the ALJ's finding of inconsistency is supported by other substantial evidence.

Accordingly, the Court finds that the ALJ's determination that plaintiff had an RFC of performing light work is supported by substantial evidence. The ALJ concluded PT Van Zytveld's opinion is not consistent with evidence in the record and lacks support from PT Van Zytveld's own notes and records. The Court declines to reweigh plaintiff's evidence to conclude that the ALJ's RFC determination is not supported by substantial evidence. *See Flaherty*, 515 F.3d at 1070.

## V.    CONCLUSION

Therefore, it is

**ORDERED** that the decision of the Commissioner that claimant is not disabled is

**AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED March 30, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

11